| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Timothy McDonald<br>Special Agent: Zachary Ferster | Telephone: (313) 226-9100<br>Telephone: (313) 234-4000 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.

Nathaniel Williams

Case No. 2:25-mj-30629
Judge: Unassigned,
Filed: 10-08-2025

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 7, 2025__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi) | Possession with intent to distribute controlled substances and Possession with intent to distribute 400 grams or more of Fentanyl. |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Zachary Ferster, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __October 8, 2025__

_____
Judge's signature

City and state: Detroit, MI

Hon. Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Zachary Ferster, being duly sworn, depose and state the following:

### INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. As such, I am a "federal law enforcement officer" as defined in Federal Rule of Criminal Procedure 41(a)(2)(C).

2. I have been a DEA Special Agent since November 2020, and am currently assigned to the Detroit Division Office, Task Force Group 8 (TFG8). In August 2020, I started the 14-week Basic Agent Training Program for the DEA at Quantico, Virginia, which was completed in November 2020. During that time, I received training that addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities. The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, fentanyl and methamphetamine.

3. I make this affidavit from personal knowledge based on my participation in this investigation, including the writing and review of reports by

1

myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances describes herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the details or facts related to this investigation.

## PROBABLE CAUSE

4. I, along with other law enforcement personnel, have developed probable cause that on or around October 7, 2025, Nathaniel WILLIAMS possessed with intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi).

5. During the morning of October 7, 2025, I received information that WILLIAMS and members of his Drug Trafficking Organization (DTO) were in possession of approximately 500 grams of fentanyl powder and looking to conduct a drug transaction.

6. At approximately 2:17 p.m., members of DEA Detroit Strike Force Group 8 (SFG8) established surveillance at 23327 Cornerstone Village Drive, Southfield, Michigan (MI), WILLIAMS primary residence. At approximately 4:04 p.m., a Blue Ford Edge bearing Michigan registration 5QRV27 was observed parking near 23327 Cornerstone Village Drive. A law enforcement database query

of 5QRV27 revealed it was registered to Nathaniel WILLIAMS at 23327 Cornerstone Village Drive, Southfield, Michigan. The garage door for 23327 Cornerstone Village Drive was observed to open and WILLIAMS was observed walking into the residence and the garage door closed behind him.

7. At approximately 4:41 p.m., the garage door for 23327 Cornerstone Village Drive was observed to open and WILLIAMS was observed exiting the garage carrying a white shopping bag in his hand. WILLIAMS was observed to enter his Edge and depart. WILLIAMS was observed to be the sole occupant of the vehicle.

8. Continuous surveillance was maintained on the Edge as it traveled to the Burger King located at 7 Mile Road and Greenfield Road in Detroit, arriving at approximately 4:50 p.m. WILLIAMS was observed to have driven straight from his residence to the Burger King parking lot.

9. I am familiar with this Burger King parking lot as I have observed WILLIAMS conduct multiple drug deals in that lot.

10. At approximately 5:02 p.m., Task Force Officer (TFO) John Leutzinger approached WILLIAMS who was still sitting in the driver's seat of the Edge. TFO Leutzinger was wearing visible police markings. As TFO Leutzinger approached, WILLIAMS was observed to reach toward the gear shift of the Edge. TFO Leutzinger asked WILLIAMS to shut off the vehicle and step out of the

vehicle and WILLIAMS complied. As WILLIAMS was stepping out of the Edge TFO Leutzinger observed a tightly wrapped square package sitting on the passenger seat in plain view.



11. At that time, WILLIAMS was detained and K-9 Vinny who is trained and certified in the detection of drug odors was deployed around the Edge. K-9 Vinny is handled by Homeland Security Investigations TFO Guy Angelucci. K-9 Vinny was last certified in October of 2024. K-9 Vinny indicated on the driver's door handle as well as indicating toward the front passenger seat toward a wrapped square package. Based on my training and experience, the wrapped square package was consistent with drug packaging. At that time, WILLIAMS was placed under arrest, placed in handcuffs and in the front seat of a vehicle.

4

12. I approached WILLIAMS and asked him for consent to search his residence which he granted and signed a DEA-88 Consent Form. During a search of his residence, a scale with white residue was found in the kitchen. A field test was performed on the scale, and it resulted in a positive test for the presence of fentanyl. Following the search, WILLIAMS was transported to Warren Police Department for a Mirandized Interview.

13. WILLIAMS was read his *Miranda* Rights and signed a DEA-13 as witnessed by TFO Leutzinger and I. During the interview, WILLIAMS admitted that he had obtained fentanyl from a local source of supply a few days ago. WILLIAMS stated that he cut the fentanyl using ingredients that were observed in the kitchen of his residence. WILLIAMS also told agents that he used the digital scale in the kitchen to weigh the fentanyl that he transported in his vehicle on October 7, 2025. Based on my training and experience, I know that drug dealers will "cut" drugs to make more product to sell. This means that they will add ingredients to the drugs. A common substance used to "cut" drugs is inositol powder, which was observed in WILLIAMS kitchen beneath the scale.

14. Following the interview of WILLIAMS, the wrapped bundle of drugs was weighed and determined to be approximately 527 grams. A field test was conducted on the drugs and it tested positive for the presence of controlled substances. A field test of the substance proved difficult due to the tightly wrapped

5

packaging. However, based on Williams's post-*Miranda* statement that he obtained the fentanyl a few days ago, that he cut the fentanyl in his kitchen with other ingredients, and that he weighed the fentanyl mixture using a digital scale in his kitchen along with the positive field test for fentanyl on the digital scale in the kitchen, there is probable cause to believe the substance WILLIAMS possessed with the intent to distribute was fentanyl.



15.  A review of Nathaniel WILLIAMS criminal history shows a delivery/manufacture charge for cocaine, heroin or another narcotic, less than 50 grams in 1991.  In 1993, WILLIAMS was convicted of possession of a controlled substance, less than 25 grams. In 1994, WILLIAMS was convicted of assault with intent to do great bodily harm less than murder. In 2006, WILLIAMS was convicted of assault with intent to do great bodily harm less than murder, assault

with dangerous weapon, weapons felony firearm and weapons, firearm discharge from vehicle. In 2013, WILLIAMS was convicted of controlled substance delivery and manufacture for cocaine, heroin or another narcotic 50-449 grams.

## CONCLUSION

16. Based on the facts established throughout this affidavit, probable cause exists to believe that Nathaniel WILLIAMS did knowingly possess with the intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi).

17. I declare under penalty of perjury the foregoing to be true and correct to the best of my knowledge and belief.

Zachary Ferster
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
or by reliable electronic means

Hon. Elizabeth A. Stafford
United States Magistrate Judge

7